Thank you, Your Honor. Stephen York for the appellants. And could you pull them, or speak into the mic, because you have to be picked up by the audio. Okay. And I'd like to reserve five minutes if I could for... You may. Well, let me just say that this is a case in which I was personally involved at the criminal case that preceded the 1983 case. And so I really – I was there when the plea was taken, and I was there when the plea was taken, and there is nothing in the record of this case to indicate that any of the plaintiffs made any admissions of any sort, factual admissions, in connection with entering their no-contest pleas to misdemeanor charges under 148A1 of the California Code, quote, delaying, obstructing, or resisting, unquote, the police. Now, all the – all the plaintiffs, the appellants, are trying to do in their 1983 action is to sue for damages for excessive use of force by the police in violation of their Fourth Amendment rights. That claim does not necessarily impugn the convictions for 148A1. And indeed, nowhere in the lower court's opinion, dismissing this case, is it ever explicitly stated how the excessive force claims that the plaintiffs now try to bring would impugn any of those convictions. The leading case in this circuit is Hooper, and Hooper, in some ways, illustrates how there is no necessary contradiction or impugnment of the underlying convictions. But I think it's very important to begin by understanding that when the court, the criminal court, superior court, accepted the pleas of no contest, there were no facts found in connection with that by the court. So we take that point. That's argued in your brief. So I have a question. Sure. You have a false arrest claim. Only under California law, not under the excessive – not under 1983. So we're not arguing probable cause for arrest under Federal law as it grounds for violation of the Fourth Amendment. So you're not trying to undercut probable cause by the California State action, which would call into conviction the validity of – call into question the validity of the conviction? No, sir, we are not. It clearly would be barred by heck in the Federal analysis, isn't that correct? Your Honor, if the convictions by nolo contendere plea imply an admission that there was probable cause to arrest, then you would have a heck conflict regarding a 1983 claim based on lack of probable cause. Whether heck applies to bar any State law claims is a question. Frankly, I don't think it does. I haven't seen any law that heck has been applied to California to bar California claims. All right. But if California – let's just take the point. If California law is – has law analogous to heck, then that claim is properly dismissed because it inherently attacks probable cause to arrest. Well, I am – And the nolo plea – Right. And, in fact, whether the nolo plea was given or not, it would inherently – however they had been convicted of it, it would inherently fall within heck and any heck analysis State law. I would agree with that analysis, Your Honor. The false arrest claim is really not the gravamen of the complaint at all. Well, I'm just trying to get the structure because there are a bunch of claims, some of which you may have a very good argument on and some that don't appear to be, and I'm trying to sort out and make sure we're talking on the same page as far as what the heck standard is. Right. I will be perfectly candid, Your Honor. I honestly don't know if a no-contest plea that is taken without any admissions or findings of fact would imply necessarily as a matter of law that there was probable cause for the arrest, that the arrest was lawful. But conceding that point is really – really beside the focus of this case, which is the use of excessive force in the apprehension of the plaintiffs. That is, there were tasers used, there were clubs used, there were police dogs used, and there were serious injuries, very serious injuries. Let me ask you – let me ask you a question, counsel. Now, in – is it true in the court where the defendant – where the plaintiffs entered these no-contest pleas that a factual basis is generally not found by the State judge, because these are misdemeanor offenses, correct? That is correct, Your Honor. So generally, do State court judges make a specific finding of fact? Your Honor, this is the only criminal case I've been involved with in 20 years, and I have absolutely no idea if that's the case or not. I really don't. I was dragooned into defending them. I was convinced of their factual innocence, and I did so. I have no idea whether that is something that is commonly done or not. I only know that at the time the Court inquired whether there was a factual basis for the plea, I most emphatically said, no, we are denying that there is any factual basis for this plea. The only reason we are entering a plea in this case at all is because these people are exhausted. They've been in court for a year. They cannot continue to come back here again and again and again. They just want to get it over. So they pled to time served, no probation, no fine. That's all I know. But whether, you know, courts typically or do not, or do, make a factual finding, I don't know. Clearly, they're not required to do so under California law. I think I cited the case that says that. So, you know, I'm just being honest with you. Unless there is some legal implication to draw from the very fact of any conviction that there exists a lawful basis for the arrest, I'm willing to concede that because, frankly, false arrest is superfluous to this case. It's really a side issue. But I don't know the honest answer to you. I really don't. Kennedy. I think you've answered the question. So if you want to proceed, what about the do you have anything more to add? Well, I think I've pretty much said everything I could think of to say in the brief. I would just like to say that the nature of the statute that they were charged with is ambiguous. There's nothing in the criminal indictment or anything else connected with the criminal case that says specifically what facts are charged against them. Did they delay? Did they obstruct? Did they resist? One of all three, two out of three? All I know is that the plaintiffs insist that they were standing on the lawn or on the porch. They were not physically involved in any altercations with the police, and the next thing they know, they were being arrested. Certainly it is possible that the police, under those circumstances, might have thought that by remaining outside, by not returning into the house, that these people, the plaintiffs, were delaying or obstructing them. That is certainly within the realm of possibility. But should the plaintiffs themselves be required to admit having done this in order to pursue excessive force claims? I think not. There's nothing that gives them – how can I put this? They're left to speculate about what facts, if any, led to their arrest. They really don't know. The police report is, frankly, completely untrustworthy, and nothing that's related in that police report can they acknowledge having done. It's, you know, it's nonsense. But having said that, I think that if there's something wrong with the complaint, the way it is drafted, if the language that counsel has objected to poses some kind of a problem, a heck problem, then I think at the very least the plaintiffs should be allowed to amend the complaint to cure that defect. The plaintiffs do not have to allege that they were as innocent as the driven snow in order to make an excessive force claim. It's quite possible that they inadvertently delayed or obstructed the police by hanging around outside, not returning into the house when they were ordered to do so, and that the force then used after they had violated the law was excessive. And I think that, you know, the Hooper case is an analogous case. Mrs. Hooper was arrested for drug possession. She resisted. When she resisted, the police used a police dog to apprehend her, causing very serious damage. And this Court found that even though there was one continual transaction, nonetheless, the police could have acted lawfully in initially trying to arrest Mrs. Hooper, and then acted in violation of the Fourth Amendment by using excessive force thereafter.   Kagan. Kagan. Well, let me go back to the example you gave, because your example is a good one under circumstances which we've allowed a 148 conviction to go forward and permit it, a 1983 action, because one continuous transaction or incident can involve both resisting, obstructing, and delaying conduct that supports the 148 no contest plea in State court. But yet, once the suspects submit, or the plaintiffs in this case submit, then at that point, any unnecessary force would then support a 1983 excessive force claim, right? Would I understand your hypothetical? Do you have the case? That is precisely what I'm arguing happened in this case. And again, yeah. But if the plaintiff files a complaint that basically says, I did nothing wrong, I was just standing there, and the police then threw me to the ground, all these things happen, and the plaintiff proceeds to trial on that particular complaint, does a win for the plaintiff on the 1983 action necessarily cause into question the validity of the 148 no contest plea? Because at that point, there's no way to distinguish what conduct was legitimate and lawful by the officers and what conduct constitutes excessive force. So another way to ask you that question is, can the plaintiff plead around the heck bar by having these broad allegations of I did nothing wrong and the entire incident constitutes excessive force by the officers? Well, that's an interesting hypothetical. It's not what's – I don't think it's what's in front of us today. First of all, your hypothetical involved a jury, a trial. If there had been a trial, then there would have been findings of fact and we would have a much clearer idea of what's in and what's out. But in this case, all we have is an indictment with an ambiguous statute which has three different components to it, any one of which would suffice for probable cause. And so the plaintiffs are literally left to speculate. What did we do, if anything? All we were doing was standing there. Now, as I say, standing there can violate the law. If the police have said, get back into the house, move back, and you don't do it, and, well, then just standing there could be cause for arrest. Even if you didn't mean to obstruct or delay, the police would have had probable cause. And I suspect that's probably what happened here in this situation.  Forgive me, I don't know. Kennedy, we're getting a little far afield here, so you're running out of time. All right.  Save some for rebuttal. Thank you. Go ahead. Good morning, Your Honors. I'm George Wilson. I represent the appellees in this matter. Counsel correctly points out that we are not dealing with a case where there was any trial. The facts that are before this Court in the record in this civil matter are those which counsel set forth in the civil complaint. Those are the facts which frame the issues in this appeal. In those facts, as alleged by the plaintiff, the plaintiffs were completely innocent, did nothing, and the first contact they had with the police was being set  up by the plaintiff. Nowhere in the complaint did the plaintiffs allege that the police told them to get back in the house and that they didn't do it. Indeed, the facts are completely the opposite of that, and they are exactly as Your Honor had addressed in her question to counsel. That puts us at odds with this Court's decision in Hooper and the California Supreme Court's decision in the Yount v. City of Sacramento. In Hooper, the Court pointed out in particular at page 1129, and I quote, Hooper pled guilty to resisting a peace officer under California Penal Code Section 148a1. She does not dispute the lawfulness of her arrest, nor does she dispute that she resisted arrest. However, she contends that Terrell used excessive force in response to her resistance. That is not what has been alleged in this case. Each of these plaintiffs alleged that when they first – when they had first contact with any police officer, he or she was doing nothing wrong. Scalia. Counsel, can't that be solved at the trial level by partial summary judgment in your favor, saying it's an established fact that they did do something wrong, and then the plaintiffs can't argue that they didn't do something wrong, and they must – and basically their case doesn't turn on whether they did something wrong. They could have been mass murderers, at least on the plaintiff's theory. After they're arrested, they are abused. So why do we throw – because they've made an untenable factual assertion that is not an element of their claim, why do we throw out the claim rather than saying you can't make that factual assertion? Well, Your Honor, I beg to differ. I will agree that they made an untenable factual claim, but it is part of – it is germane to the claims in their action. They are alleging false arrest under California State law. I have no problem. I think counsel has pretty clearly said that – put that aside. All right. Well. I assume we just toss that out. That's not, as a practical matter, going to affect this case. Well, Your Honor, here's the thing. You know, they have alleged in their complaint that from the outset these officers acted unlawfully. Every single officer that they named as a defendant, they claimed, acted unlawfully ab initio. If the officers are acting unlawfully ab initio, then by definition of law in California, these plaintiffs could not have been found guilty under any sort of 148 violation. Well, that's not the point. Judge Garbus is saying they haven't failed to state a claim. What they failed to do is narrow the claim. And you can move for summary judgment and say to the extent – like false arrest, I suppose they didn't give that up. Anything that is tied to the initial arrest is out if the nature of their claim is to call that into question. But if there is within their pleading, which there seems to be, a claim that they suffered battery, excessive force, once they had submitted, that is a viable claim. It's not heck barred because it's not calling into question the basis of the conviction. It's simply saying even if the police had probable cause, lawfully arrested us and the like, the manner in which they executed the arrest thereafter violated our rights. Well, that seems to be the theory of their claim. Well, that's not the theory of their claim, Your Honor, because it's not what they pled. And I think that the California Supreme Court in Yount accurately addressed this very concern. Because in Yount, while parsing the 148 analysis, the Court said where the plaintiff alleges that the officers – that he offered no resistance, which is what these plaintiffs have alleged, that he posed no threat of obstruction, and that the officers had no justification to use force, those are the allegations that are made in this complaint. We were standing there doing nothing, and these cops sat upon us. Where those things – where those are the allegations, the California Supreme Court says 148 acts as a bar under both State and Federal law in Heck, and that tracks right along with Hooper, where in Hooper, Mrs. Hooper or Miss Hooper admitted that she had resisted the officer. These people have not. Well, suppose we had – forget the Heck issue, so that's not there. But suppose we're in – we're going to trial on these facts, and the plaintiffs had made their position that we were perfectly innocent, et cetera, and the police said, no, you weren't. And we're giving jury instructions to the jury, and the plaintiff – the defendant gets up and says, Judge, I want the jury instructed that if they find that the defendant or the plaintiffs resisted arrest, the jury must find against the plaintiffs on their post-erects excessive force claim, that would be an erroneous instruction. The jury would – the judge would be saying, even if you find – you find that they did in fact resist arrest, you can take that to account for credibility purposes on their post-arrest claim, but the fact that they did it does not eliminate the possibility of a valid post-arrest claim. I don't see how we're sticking them with the necessity to prove a fact that is not essential to their claim. But, Your Honor, they have made it essential to their claim by the way they pled their case. They say, we did nothing, we didn't resist, we didn't – we didn't obstruct – we did nothing to these cops, they just said upon us. They didn't even so much as allege what counsel stood here and said might cover his bases, that they told us to get back in the house and we didn't do it. They didn't allege that. The plaintiffs often make claims in their complaint, and the defense gets summary judgment as to some of their factual allegations, and the case moves on to the things that make up, if they can prove it, a valid claim. I understand that, Your Honor, but we have to remember that we're dealing here at a 12B6 stage where the facts of the case are as set forth in the pleadings. We must accept them as true and deal with them as against the law. They set the factual bases. But the facts do say that post-arrest they were manhandled by the police. So accepting that as true, would you agree that if the law allows a claim of that nature to proceed absent failure of proof or whatever, within those allegations there is embedded a legally viable claim? I think that's what Judge Garbus was trying to make clear to you, that you can  assume that the plaintiffs did not be able to get an instruction or a summary judgment on post-arrest excessive force once the issue of they never did anything wrong was disposed of. Well, Your Honor, the language in the complaint. Counsel. Okay. You're saying that there is no such claim articulated that post-arrest they were manhandled? They said their claim is that during the arrest they were beaten. During the arrest.  Well, but you're not going to be able to prove it. So what? The police can't use excessive force in engaging in a lawful arrest. They can create damages. Heck doesn't bar that. Police don't get a free ride if there's probable cause to beat the hell out of somebody. I fully understand that, Your Honor. However, the fact of the matter is that under California law, if the police use excessive force during the arrest, the arrest becomes unlawful ab initio. In Hooper, Ms. Hooper was ordered. So if somebody admits that they were lawfully arrested, but in the course of the arrest they were beaten up and the like, when they admit to the probable cause, they're giving up any claim for damages for excessive force? Well, Your Honor, I'm not sure. But are you saying that if excessive force is used under California law, there is no lawful arrest? Correct. That is the law in California. Well, wait a minute. Let's take that. I think what you're not saying is this. You have a person who committed a crime, a murder, whatever. He's arrested in the course of the arrest, he's beaten. That doesn't invalidate his conviction for the murder. No. That would allow him an unlawful, a false arrest claim. True. However, Your Honor. That doesn't hurt. However, Your Honor. It actually helps these guys here. It doesn't hurt them. However, Your Honor, under California law, a necessary element of the crime of 148 is that the officer was acting lawfully. A necessary element of the crime of murder is not that the officer was acting lawfully during the course of the arrest. That's the difference. Well, the officers were acting lawfully in seeking to make an arrest. I mean, the resistance, it depends when the crime is committed. But I would say the crime is committed when they did whatever behavior it was that justified the arrest, and that is they obstructed a search or something. Your Honor, the facts that they allege here is that they were standing there doing nothing, and that they were set on the ground. But let's suppose, by admitting them to no low plea, they conceded that they were not doing nothing, okay? Now, the police had every reason to move them off the sidewalk. The police go up and whack them upside the head in executing that. They were perfectly justified in moving them off the thing, but they can't use night snuckles to drive them back into the house. Are you saying that under California law, if they executed the arrest, it invalidates the entire premise of their moving against them in the first place? It does, Your Honor. They cannot be convicted of one thing. And the case what's the citation for that? The criminal trial court would. I'd like you to cite me the case. I saw it this morning, Your Honor, and I'm afraid I don't have it on the tip of my tongue. There are a number of, I mean, California's. Is it in your brief? It's not in my brief, no. Okay. Then I'll let you submit a 28-J letter so you can cite us the authority that says  I appreciate that, Your Honor. Thank you. Counsel, the point is you're saying that at the criminal trial for this crime, the defense would say, or say, we're not denying that we did the obstruction, but while they were arresting us, they whacked us, therefore, we're not guilty. And the court would say, yes, you obstructed all right, but since they hit you while they were arresting, the case is dismissed. Yes, Your Honor. That's exactly the law in California. Okay. Because one of the elements of a 148 conviction is that the officer had to have been engaged in the lawful performance of his duties. Yes. And the use of excessive force would not be a lawful performance of his duties. That's correct, Your Honor. And by the same rule. It might even be in the standard jury instructions in California. I don't know if it's case law based or part of the standard instructions, but I think the standard instructions that the jury gets for a 148 trial would be that the defendants obstructed, delayed, or resisted arrest while the officer was attempting to lawfully discharge his or her duties. That's correct, Your Honor. Yes. And California case law with regard to this excessive force aspect of it is old law. It goes way, way back in California criminal jurisprudence. Well, you may have gotten a lifeline because Judge Wynn is an authority from the State Courts of California, so we may have no need of a 28J letter, but if we need it, we'll ask him. Thank you. Well, that's why I asked counsel for the appellants, this question of one continuous course of conduct, because part of the conduct could actually support a 148 conviction, but then there may very well be other allegations that support a 1983 action, so the two could exist side by side. Part of the problem that I see in this case, it's very difficult to see whether they can exist side by side, because the allegation says we're completely innocent, we didn't do anything wrong, so the defendant can't tell which allegations are barred and which ones aren't. And by claiming that they're completely innocent, which they did in the complaint, they take themselves out of Hooper, they take themselves or they put themselves exactly where the Yount courts said they can't go. But is the solution then to require plaintiffs to articulate more clearly in the complaint what served as the basis for the 148 conviction and what may support a 1983 action? Because I don't think there's any authority that would really require that kind of specificity at the complaint stage. Do you have any authority that supports that? I think that, you know, they have set the factual context of their claims by their by what they put in their complaint. To, you know, our argument both in the trial court and here as to why they shouldn't be allowed to amend is because in order to amend, in order to plead around the problems they created with their complaint, they would have to plead facts that are contradictory to and inconsistent with facts that they have already pled. They've already said we were completely innocent. If they turn around now and say, yeah, okay, we did something wrong that let the cops arrest us, they're contradicting their prior pleading. And the case of Ritty v. Litton Industries, Incorporated, a Ninth Circuit case from 1990, bars them from doing that. They created their own problem with their pleadings. Okay. I think we have it. We're over time. Thank you, Your Honor. Can I pause there for a moment? No, that's okay. We asked you the questions. Yes, Your Honor. Just briefly, you know, I would just like to follow up. I have never heard of a defense lawyer in a criminal case arguing to a jury, yes, well, I mean, even if you find that, you know, Mr. Smith or Ms. Jones committed, you know, the ax murder, you have to let them go because the police beat the hell out of them when they apprehended them. Well, I think counsel is saying that under California law, your problem is if you are insisting that your clients were absolutely innocent, notwithstanding the no low plea, and if California law says that that would, if you were correct, even if you, you know, even if they had lawful reason to approach them on the sidewalk, if California law is that in executing the arrest, that would nullify the 148, then you may well have a problem. So we'll have to sort that out. Okay. Thank you, Your Honor. Thank you both. All right. The case argued is submitted.
judges: Garbis, Fisher, Nguyen